UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| ABDUL-AZIZ RASHID MUHAMMAD, ) ) Plaintiff, ) ) V. ) ) ) UNITED STATES OF AMERICA, ET AL., ) ) Defendants. ) ) ) ) | Civil No. 07-68-GFVT **MEMORANDUM OPINION & ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the defendants' "Motion to Dismiss or, in the Alternative, Motion for Summary Judgment" (the "Motion to Dismiss) [Record No. 116]. For the reasons set forth below, the Court will grant summary judgment in favor of the defendants and dismiss this action.

**I.**

Plaintiff Abdul-Aziz Rashid Muhammad is currently confined in the Federal Correctional Institution-Butner located in Butner, North Carolina. Muhammad initiated this civil action on April 13, 2007. On that date, he filed his original Complaint asserting claims under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2680 ("FTCA"). Specifically, Muhammad alleged that the United States was liable to him for $7,000,000.00 in property and personal injury damages resulting from the deliberate confiscation and destruction of his personal property, including legal materials, that occurred during a massive shakedown at the

United States Penitentiary-Big Sandy ("USP-Big Sandy"), Muhammad's previous location of confinement, on December 29, 2005. He further alleged that the confiscation of his legal documents caused him to experience extreme emotional distress, thereby worsening a preexisting viral condition.

On July 2, 2007, Muhammad filed an Amended Complaint in this action, in which he asserts various constitutional claim under 28 U.S.C. § 1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 430 U.S. 388 (1971) [Record No. 16]. Naming USP-Big Sandy employees as defendants, Muhammad challenges numerous conditions of his previous confinement. Most of his claims involve denial of medical treatment and allegedly unsanitary conditions. Some of the claims, however, stem from the cell search incident which had been the subject of Muhammad's original FTCA Complaint.

On February 27, 2008, the Court entered a lengthy Order dismissing Muhammad's original FTCA complaint, and some of the claims asserted in the Amended Complaint which related to the destruction of personal property. The Court denied Muhammad's motion seeking reconsideration of this Order [*See* Record No. 94]. Then, on September 11, 2008, the Court entered an Order [Record No. 97] which dismissed the unnamed "Jim Doe" and "John Doe" defendants named in the Amended Complaint and directed the United States Marshal's Office to re-attempt service on the individuals named as defendants in the Second Amended Complaint.[1] After being served with process, the defendants filed the Motion to Dismiss

---

[1] Prior to the entry of the February 27, 2008 Order dismissing the FTCA claims,

which is currently before the Court.

## II.

### A.

Federal Rule of Civil Procedure 12(b)(6) provides for a defendant to move for dismissal of a plaintiff's complaint for "failure to state a claim upon which relief can be granted." If the Rule 12(b)(6) motion has attachments which the Court considers, then the motion "shall" be converted into a motion for summary judgment pursuant to Rule 56. *See Song v. City of Elyria, Ohio*, 985 F.2d 840, 842 (6th Cir. 1993). As the Court has considered the sworn Declarations submitted by the defendants, their motion to dismiss must be converted into a motion for summary judgment.

Summary judgment should be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence, all facts, and any inferences that may be drawn from the facts must be viewed in the light most favorable to the nonmovant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 245 (6th Cir.),

---

Muhammad filed a "Motion to Amend the Complaint and File Second Amended Complaint" [*See* Motion, Record No. 81]. Muhammad attempted to assert a new FTCA claim–that of an injury to his thumb and wrist which had occurred on August 31, 2006. The Court denied Muhammad's request to raise that unrelated claim in this action [*See* Order, Record No. 86]. Muhammad then filed a separate FTCA civil action in this Court, concerning his thumb and wrist injury. *See Muhammad v. United States of America*, Pikeville Civil Action No. 7:08-131 (Hon. Karen K. Caldwell, presiding).

*cert. denied,* 522 U.S. 967 (1997).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986). The significant question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-53 (1986).

The moving party has the burden of showing there is an absence of evidence to support a claim. *Celotex*, 477 U.S. at 324-25. After the moving party carries its burden, the non-moving party must go beyond the pleadings to designate by affidavits, depositions, answers to interrogatories, and admissions on file, specific facts showing that there is a genuine issue of material fact for trial. *Id.* If the non-moving party completely fails to prove an essential element of his or her case, then all other facts are rendered immaterial. *Id.* at 322-23. With these standards in mind, the Court addresses the defendants' motion under Rule 56.

**B.**

**1.**

The defendants argue that Muhammad has failed to administratively exhaust twenty-five of the thirty constitutional claims asserted in his Amended Complaint. Specifically, the defendants assert that Muhammad failed to administratively exhaust Claims 1-4, 9-13, and

4

15-30 through the Bureau of Prisons ("BOP") administrative remedy system.[2] In support of that argument, the defendants submit the sworn Declaration of Joseph E. Tang, Supervisory Attorney at the Lexington Consolidated Legal Center ("CLC") of the BOP [Record No. 65-2].[3] According to Mr. Tang, the administrative remedy history set forth in the **SENTRY** database reveals that Muhammad used the BOP's administrative remedy process to exhaust only five of the thirty claims asserted in his Amended Complaint.

Essentially, nothing in Muhammad's Response to the Motion to Dismiss or in the 223 exhibits attached to that Response contradict Tang's statement that only five of Muhammad's thirty claims were properly exhausted. Muhammad attached eighteen documents which pertain to various administrative grievances he filed concerning his confinement at USP-Big Sandy [Record No. 119-21, pp. 2-19]. These documents substantiate that Muhammad filed many grievances at the institutional level, some at USP-Big Sandy and some at FCI-Butner after he was transferred there in 2007 [*Id*].

---

[2] The administrative remedies available to inmates confined in BOP institutions are set out in the Administrative Remedy Program, found at 28 C.F.R. §§ 542.10-.19. Section 542.13(a) demands that an inmate first informally present his complaint to the staff, thereby providing them with an opportunity to correct the problem, before filing a request for an administrative remedy. If the inmate cannot informally resolve his complaint, then he may file a formal written request (a BP-9 form) to the Warden. *See* § 542.14(a). If the inmate is not satisfied with the Warden's response, he may appeal (BP-10) to the Regional Director, and, if not satisfied with the Regional Director's response, the inmate may appeal (BP-11) to the Office of General Counsel. *See* § 542.15(a)-(b).

[3] Tang has access to the BOP's official files and records for inmates who are presently or have been previously, confined in CLC, Lexington, Kentucky. The records include information contained in the BOP's "**SENTRY**" database, which tracks all administrative remedies filed by federal inmates.

Ultimately, however, these documents provide no assistance, as they describe the grievances in only broad terms and do not identify the specific dates on which the actions complained about by Muhammad allegedly occurred at USP-Big Sandy. The documents suggest that a few of the grievances progressed to the BOP Central Office level, but, as the defendants acknowledge that five of Muhammad's claims were fully exhausted, this adds nothing of relevance to the dispute.

Muhammad was required to administratively exhaust all his claims prior to seeking judicial relief. The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires state and federal prisoners bringing actions concerning prison conditions and any other incidents of prison life to exhaust all available administrative remedies before suing in federal court. *See Porter v. Nussle*, 534 U.S. 122 S. Ct. 983 (2002); *Lavista v. Beeler*, 195 F.3d 254, 256 (6th Cir. 1999); *Ricks v. Peterson*, 26 Fed. Appx. 588, 2001 WL 1345089 (8th Cir. November 2, 2001) (Not selected for publication in Federal Reporter) (inmate was required to exhaust administrative remedies before bringing suit under *Bivens* based on inadequate conditions of confinement). Further, it is insufficient for a prisoner merely to claim that grievances were not answered satisfactorily or to begin the grievance process and not finish it. For any issue the plaintiff intends to raise in court he must demonstrate exhaustion, or his attempts at exhaustion, before he can be considered to have substantially complied with the law. *See Wyatt v. Leonard*, 193 F.3d 876 (6th Cir. 1999).

In *Lyons v. United States Marshals*, 840 F.2d 202 (3d Cir. 1988) the Third Circuit explained the benefits exhaustion yields:

> The exhaustion requirement promotes: (1) deference to Congress' decision that independent administrative tribunals, not courts, should serve as the initial forum for dispute resolution; (2) respect for administrative autonomy by minimizing unnecessary judicial intervention; and (3) judicial economy by resolving complaints or setting forth findings of fact.

Id. at 205. Furthermore, although exhaustion is not jurisdictional, it is mandatory. *Wyatt v. Leonard*, 193 F.3d at 879. The Sixth Circuit has repeatedly underscored the underlying reasons for exhaustion, explaining that it is a statutory requirement and that "the importance of using the prison grievance process [is] to alert prison officials to problems." *Freeman v. Francis*, 196 F.3d 641, 644 (6th Cir. 1999); *see also Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001); *Hartsfield v. Vidor*, 199 F.3d 305, 308-09 (6th Cir.1999).

This case underscores another important reason for the exhaustion requirement: ensuring that the Court has an adequate record before it to review the agency action in question. *Woodford v. Ngo*, 126 S. Ct. 2378, 2384-86 (2006); *Fazzini v. Northeast Ohio. Corr. Center*, 473 F.3d 229, 232 (6th Cir. 2006). Without a full administrative record explaining the BOP's actions and reasons therefore, the Court lacks an adequate evidentiary basis upon which to review these twenty-five claims.

Muhammad alleges that the defendants prevented him from filing administrative grievances concerning his confinement at USP-Big Sandy. The defendants deny this allegation, and Muhammad offers nothing in his 44-page response and his 223 pages of exhibits to substantiate his claim other than conclusory

statements. When a plaintiff alleges that he has been deprived of rights, privileges secured by the federal Constitution, or laws or amendments thereto, but then nowhere identifies the substance of the alleged deprivation, such conclusory statements do not support a claim under §1983, *see O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994) (citing *Ana Leon T. v. Federal Reserve Bank of Chicago*, 823 F.2d 928, 930 (6th Cir.), *cert. denied*, 484 U.S. 945 (1987)), and they are insufficient to raise a genuine issue of material fact, *see Scheid v. Fanny Farmer Candy Shops, Inc*. 859 F.2d 434, 437 (6th Cir. 1988).

The fact that Muhammad exhausted five of his civil rights claims is evidence that he had access to and availed himself of all three steps of the BOP's administrative remedy process. Had the defendants interfered with or subverted Muhammad's efforts to exhaust his claims, as he alleges, those five claims would not have survived to this level.

Thus, the Court will dismiss Claims 1-5, 9-13, and 15-30 of Muhammad's Amended Complaint for failure to exhaust. Given the passage of time since the claims accrued, Muhammad will be unable to exhaust these claims in the time frame established by 28 C.F.R. § 542.14.

**2.**

Three of Muhammad's five exhausted claims allege denial of medical treatment in violation of the Eighth Amendment. Specifically, Claim 5 alleges that Defendants Smith and Bradshaw refused to administer Muhammad's liver medication on

December 5, 2005; Claim 7 alleges that Defendants Hapney, Chance, Smith, Ramirez, and Batts denied Muhammad a single cell despite having a medical slip authorizing him to occupy a single cell, and that they placed Muhammad in a filthy cell for almost four hours on February 27, 2006; and Claim 8 alleges that, on March 31, 2006, Defendants Sexauer, Chance, and Batts denied Muhammad his liver medication because he requested that it be dispensed from the pack, not from Defendant Sexauer's hands.

"Where prison officials are so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain, they impose cruel and unusual punishment in violation of the Eighth Amendment." *Horn by Parks v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed.2d 251 (1976)). The test to determine whether prison officials have acted with "deliberate indifference" has both an objective and subjective component. *See Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). The objective component requires a showing that the alleged deprivation is "'sufficiently serious'" and that the inmate is "'incarcerated under conditions posing a substantial risk of serious harm.'" *Brown*, 207 F.3d at 867. The subjective component requires a showing that prison officials had "'a sufficiently culpable state of mind.'" *Id*. (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed.2d 811 (1994)). This standard is satisfied if "the official knows of and disregards an excessive risk to inmate health or safety." *Id*.

It is not disputed that Muhammad suffers from Hepatitis-C. Even so, the

9

objective component of an Eighth Amendment claim requires a showing that the alleged deprivation is "'sufficiently serious'" *and* that the inmate is "'incarcerated under conditions posing a substantial risk of serious harm.'" The Court is unable to conclude that while Muhammad was confined at USP-Big Sandy, he was incarcerated under conditions posing a substantial risk of serious harm. Dr. Richard Ramirez was responsible for Muhammad's medical care at USP-Big Sandy and has reviewed his medical records. In his sworn Declaration, Dr. Ramirez submits his medical and professional opinion that Muhammad received necessary medical treatment and enjoyed reasonably good health while confined at USP-Big Sandy. Dr. Ramirez's Declaration leads to the conclusion that even if the allegations in Claims 5, 7, and 8 are true, Muhammad's health was not detrimentally affected.

Muhammad has presented the Court with no evidence refuting Dr. Ramirez's Declaration that the medical care provided to him was adequate. He has presented no evidence suggesting that being denied medication on two occasions and being placed in a cell for a few hours caused him to suffer any physical harm. *See Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (plaintiff who asserts a claim based on delay in medical care is required to produce verifying medical evidence in the record in order to establish the detrimental effect of the delay) (relying on *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1188 (11th Cir. 1994).[4] The

---

[4]
*See also Byers v. Strachan*, 69 Fed. Appx. 274, 275, 2003 WL 21456241, 2 (6th Cir. June 20, 2003) (not selected for publication in the Federal Reporter) ("Insofar as Byers's claim relies on a delay in treatment, he must place verifying medical evidence in the record to establish the

only harm which Muhammad claims to have suffered appears to be emotional distress.

Muhammad's dispute lies solely with the adequacy of the medical treatment provided. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976)). *See also Durham v. Nu'Man*, 97 F.3d 862, 869 (6th Cir. 1996) ("The Plaintiff's complaints go to the adequacy of the medical care; they do not raise an issue of unnecessary and wanton infliction of pain as required under *Estelle*. They were not deliberately indifferent to a serious medical need of the Plaintiff.").

To the extent Claims 5, 7, and 8 are considered Eighth Amendment "conditions of confinement claims" as opposed to Eighth Amendment medical claims, Muhammad fares no better. Conditions that might be deemed cruel and unusual if they were permanent may not rise to the level of an Eighth Amendment claim if they are *temporarily* imposed upon a prisoner. *Wilson v. Seiter*, 501 U.S. at 300; *see also Hutto v. Finney*, 437 U.S. 678, 686-87 (1978). Further, while Muhammad may not have been pleased with certain decisions relating to the conditions of his confinement

---

detrimental effect of the delay."); and *Carter v. Vandercook*, 59 Fed. Appx. 52, 54, 2003 WL 248074, 2 (6th Cir. February 3, 2003)(not selected for publication in the Federal Reporter) ("Furthermore, to the extent that Carter asserted an Eighth Amendment claim based upon an alleged delay in medical treatment, his claim fails as he did not allege, much less provide verifying medical evidence to establish, the detrimental effect of the delay.").

11

and/or medical care, the federal courts are cautioned to stay out of the business of micro-managing prisons. *See Bell v. Wolfish*, 441 U.S. 520 (1979); *Turner v. Safley*, 482 U.S. 78 (1987); and *Turney v. Scroggy*, 831 F.2d 135 (6th Cir. 1987). The Supreme Court has explicitly rejected heightened judicial scrutiny of prison policies. Rigorous scrutiny, the Court noted, is simply "not appropriate for consideration of regulations that are centrally concerned with the maintenance of order and security within prisons." *Thornburgh v. Abbott*, 490 U.S. 401, 409-10, 109 S. Ct. 1874 (1989).

In sum, other than Muhammad's own conclusory assertions that the defendants were conspiring to deprive him of his constitutional rights, the record is devoid of any evidence which would support such a claim. Therefore, summary judgment will also be granted in favor of the defendants with respect to Claims 5, 7, and 8 of the Amended Complaint.

### 3.

Muhammad alleges that the defendants retaliated against him for filing numerous grievances and civil actions.[5] In Claim 14, Muhammad alleges that several defendants retaliated against him by preparing a disciplinary Incident Report charging him with being out of bounds while using a restroom in the Health Services area. This claim lacks substance.

---

[5]Muhammad contradicts himself. In his response to the motion to dismiss, he argues that the defendants obstructed his ability to file grievances, yet, at the same time, he alleges that he filed so many grievances that the defendants retaliated against him by transferring him to another facility.

First, in her sworn Declaration, Defendant Pamela Runyon offers a valid explanation for the issuance of the Incident Report. Runyon states that she saw Muhammad in the Health Services Department on or about July 19, 2006 [*See* Runyon Declaration, Record No. 116-7]. Although Muhammad informed Runyon that he was using the restroom, she did not consider that to be a legitimate reason for his presence in the area. She explained that inmates are allowed access to the Health Services area under only two circumstances: (1) if they are on "call-out" status for medical appointments; or (2) if a staff member has specifically asked them to wait in that area [*Id.*, ¶ 3]. Because those exceptions did not appear to apply to Muhammad, Runyon wrote a disciplinary report charging Muhammad with being out of bounds [*Id.*].

Second, Muhammad suffered no actual injury as a result of the Report. Unless a person has experienced an actual injury, as opposed to a speculative claim of injury, the person is without standing to assert a civil rights claim. *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 471 (1982); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992); *Briggs v. Ohio Elections Comm'n*, 61 F.3d 487 (6th Cir. 1995). If a party does not have standing to bring an action under Article III of the Constitution, a court must issue an order of dismissal as it has no jurisdiction over the matter. *Greater Cincinnati Coalition, et al. v. City of Cincinnati*, 56 F.3d 710, 715 (6th Cir. 1995) (citing *DeBolt v. Espy*, 47 F.3d 777, 779 (6th Cir. 1995)).

Here, Muhammad was not placed in disciplinary confinement, he did not lose

13

phone, television, library, recreational, or commissary privileges, and he did not lose any good time credits because of the Incident Report. Absent the loss of good time credits, the loss or suspension of any other type of privilege would not establish a valid Fifth or Eighth Amendment claim. *Sandin v. Conner*, 515 U.S. 472, 484-86, 115 S. Ct. 2293 (1995);[6] *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir.1997). Muhammad was not sanctioned and the report was expunged from his record. Therefore, he sustained no actual or compensable injury.

Finally, to the extent that Muhammad alleges that the Incident Report caused him emotional distress, he states no claim. An inmate may not seek damages for emotional distress or mental suffering without showing a prior physical injury. 42 U.S.C. § 1997e(e). *See Mitchell v. Horn*, 318 F.3d 523, 533 (3d Cir. 2003); *Zehner v. Trigg*, 133 F.3d 459, 461 (7th Cir. 1997); *and Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). No physical injury has been established here.

In sum, the defendants have shown that there is an absence of evidence to

---

[6]

To determine whether a liberty interest is implicated in a prison setting, the interest must be limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84, 115 S. Ct. 2293, 132 L. Ed.2d 418 (1995). In *Sandin*, a state prisoner challenged his 30-day sentence to segregation after the prison adjustment committee followed a prison regulation in determining Sandin's guilt. The question was whether the regulation created a liberty interest which would have entitled him to substantial due process procedures established in *Wolff v. McDonnell*, 418 U.S. 539, 564-71 (1974).

The Supreme Court determined that neither the Due Process Clause nor the Hawaii prison regulation at issue presented a liberty interest such as to trigger due process procedural protections set forth in *Wolff*. The Court stated that "Conner's discipline in segregated confinement did not represent the type of atypical, significant deprivation in which a state might conceivably create a liberty interest . . . ." *Id.* at 483-84. *Sandin* focused not on the content of the regulations, but on the "nature of the deprivation" visited upon the inmate. *Id.* at 481.

support a valid retaliation claim related to the Incident Report. *Celotex*, 477 U.S. at 324-25. Claim 14 will therefore be dismissed.

**4.**

Muhammad also alleges that the defendants retaliated against him by ordering his transfer to another prison, FCI-Butner. This claim lacks merit. The defendants are entitled to summary judgment on this issue.

*Thaddeus-X v. Blatter,* 175 F.3d 378 (6th Cir. 1999), holds that a retaliation claim has three elements: (1) the prisoner engaged in protected conduct; (2) an adverse action was taken against the prisoner that would deter a person of ordinary firmness from continuing to engage in that conduct; (3) a causal connection exists between the first two elements, *i.e.*, the prisoner's protected conduct motivated, at least in part, the adverse decision. *See Id*. at 394. Muhammad's numerous transfers within the BOP system, including his 2007 transfer from USP-Big Sandy to FCI-Butner, do not constitute retaliation under the First Amendment to the United States Constitution. Congress has vested the BOP "with the right to exercise complete and absolute discretion in matters relating to the incarceration and classification of a lawfully convicted prisoner." 18 U.S.C. § 3621; *Moody v. Daggett*, 429 U.S. 78, 88 (1976); and *Beard v. Livesay*, 798 F.2d 874 (6th Cir. 1986). Prisoners have no inherent constitutional right to placement in a particular prison, security classification, or housing assignment. *See Olim v. Wakinekona*, 461 U.S. 238, 245, 103 S. Ct. 1741 (1983); *Meachum v. Fano*, 427 U.S. 215, 225, (1976); *Montanye v. Haymes*, 427 U.S. at 242; *Marchesani v. McCune*, 531

15

F.2d 459 (10th Cir.), *cert. denied*, 429 U.S. 846 (1976). Accordingly, this claim will be dismissed.

**5.**

In Claim 6, Muhammad alleges that several defendants caused his cell to be searched on December 29, 2006. He claims that, as a result of this search, his property was damaged or removed from his cell. Muhammad further alleges that Special Investigative Agent ("SIA") James Link refused to investigate or take pictures of his cell after the search. The defendants dispute that they were in involved in an effort to intentionally "ransack" Muhammad's cell in order to destroy his personal property.

In his sworn Declaration, SIA Link recalls that Muhammad complained to the Warden about the condition of his cell after the shakedown in question. [Declaration of James Link, Record No. 116-6, ¶3]. A shift lieutenant was assigned to photograph Muhammad's cell after the shakedown using a digital camera [*Id*.]. Link recalls that another non-Special Investigative Services ("SIS") staff member accidentally erased the photographs of Muhammad's cell. [*Id*.]. According to Link, no SIS Department employees were involved in photographing Muhammad's cell or otherwise investigating Plaintiff's complaints. [*Id*.].

To the best of Link's recollection, no staff members acted unprofessionally in searching Muhammad's cell [*Id*., ¶4]. Link explains that "mass shakedowns," including the one in question, involve staff from multiple institution departments who conduct the shakedowns quickly without knowing which inmates are assigned to the

16

cells they search [*Id.*]. Link explains that, according to BOP policy, staff should search the cells and leave them in basically the same condition as found. [*Id.*, ¶5]. Link acknowledges that at times, due to the speed of the search, cells may be left in a condition less than desirable. [*Id.*] Link asserts, however, that the disarray is not due to a deliberate attempt to damage, destroy, or misplace an inmate's property. [*Id.*]. He states that while Muhammad may not have been happy with the condition of his cell after the shakedown, there was no evidence that staff deliberately destroyed or misplaced his property.

As noted previously, an Eighth Amendment claim for emotional distress must be premised on physical contact, 42 U.S.C. § 1997e(e), and Muhammad alleges no such contact in connection with the cell search. To the extent that Muhammad alleges that the search violated his Fifth Amendment right to due process of law, that claim also fails. Muhammad had no expectation of privacy with respect to either his cell or his personal belongings. Under BOP Program Statement 5251.05, *Searches of Housing Units, Inmates, and Inmate Work Areas*, prison officials are allowed to search an inmate's housing and work area, and personal items contained within those areas, without notice to or prior approval from the inmate and without the inmate's presence in order to detect contraband, prevent escapes, maintain sanitary standards, and eliminate fire and safety hazards.

Moreover, Muhammad has not established that an inmate has a constitutional right to an internal investigation when prison officials conduct a shakedown of an inmate's cell.

17

Although Muhammad may have been distressed over the state in which the prison guards left his cell, he enjoys no protected liberty interest in not having his cell searched. Over twenty years ago, in *Hudson v. Palmer*, 468 U.S. 517, 104 S. Ct. 3194 (1984), the Supreme Court rejected that notion. Specifically, the Court stated:

> [W]e hold that society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions. . . .

*Id.* at 526. The Court further opined:

> The administration of a prison, we have said, is at best an extraordinarily difficult undertaking. But it would be literally impossible to accomplish the prison objectives identified above if inmates retained a right of privacy in their cells. Virtually the only place inmates can conceal weapons, drugs, and other contraband is in their cells. Unfettered access to these cells by prison officials, thus, is imperative if drugs and contraband are to be ferreted out and sanitary surroundings are to be maintained.

*Id.* at 527 (citations and internal quotation marks omitted). *See also Wilson v. United States*, 2001 WL 761204 (D. Kan., June 26, 2001) (Not reported in F. Supp. 2d) (federal prisoner had no liberty interest in not having his cell searched without his consent, and had no constitutional privacy right as to his property)

Finally, Muhammad complains that the search of his cell deprived him of typewriter ribbons which he had in his cell at the time. The loss of the typewriter ribbons is not a claim of an atypical condition of confinement under *Sandin v. Connor*. Clearly, Muhammad has not suffered any actual harm as a result of the loss, as he has

18

zealously litigated this action since filing it in April of 2007, despite the loss of his typewriter ribbons. Muhammad's constitutional claims related to the search of his cell will therefore be dismissed.

### III.

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

(1) The defendants' "Motion to Dismiss or, in the Alternative, Motion for Summary Judgment" [Record No. 116] is **GRANTED**;

(2) All First, Fifth, and Eighth Amendment constitutional claims asserted by Plaintiff Abdul-Aziz Rashid Muhammad are **DISMISSED with prejudice**;

(3) This action [7:07-CV-68-GFVT] is **DISMISSED with prejudice** and **STRICKEN** from the Court's active docket; and

(4) Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the named defendants.

This the 25th day of September, 2009.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge